UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

'08 CIV 9050

| | |
|---|---|
| BCM DEVELOPMENT, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>PETER OPRANDY as trustee of<br>THE OPRANDY TRUST, and THE<br>OPRANDY TRUST<br><br>           Defendants. | Civil Action No:<br><br>**COMPLAINT**<br><br>Jury Trial: Yes |

Plaintiff, by way of Complaint against defendants, alleges:

## SUMMARY OF THE ACTION

1.    On or about October 16, 2001, plaintiff and defendants entered into a contract for land whereby defendants, as Seller, would sell to plaintiff, as purchaser, a certain peace of real property located on State Highway 17A in Warwick, New York.

2.    There were eight amendments to the contract containing provisions granting the purchaser various extensions of time in terms of the closing date in order to gain necessary approval to the subject land.

3.    Each extension required a sum of money paid to defendants, 17 of which were not "in addition" to the purchase price.

4.    During the course of this contract, there was an

unanticipated 18-month litigation, brought by third persons or other entities who were neither parties to the contract or this litigation during which time approvals could not be processed or obtained.

5.    There is a rider to the original contract containing a moratorium clause stating that any period during which the purchaser cannot proceeded due to a moratorium. Said period will not count in time with respect to the contract.

6.    The final outside closing date was September 15, 2008. Plaintiff was ready, willing and able to close of said date; however, defendants were not for the reasons set forth below.

7.    Upon information and belief, defendants were not ready, willing and able to deliver marketable and insurable title as required by the contract and otherwise breached because defendants wrongfully refused to give plaintiff certain credits against the purchase price to which they were entitled.

8.    Plaintiff is entitled to a return of all monies representing the credits to which the are entitled pursuant to the contract, and representing all monies expended in anticipation of the contract being fully performed by the defendants.

9.    Plaintiff is also entitled to a lien on the subject property pursuant to clause 24 of the contract for all the monies expended in furtherance of the contract and reasonable expenses for same, including for approvals.

2

## PARTIES/JURISDICTION/VENUE

1.    At all relevant times stated herein, plaintiff, BCM DEVELOPMENT COMPANY, has a principal place of business at 576 Valley Road #301, Wayne, NJ 07470.  Plaintiff was and still is a limited liability company doing and transacting business in New York and New Jersey.

2.    At various times and continuing to the present, upon information and belief, defendants have an address of 1229 Stonegate Way, Crozet, VA 22932.  Defendants have conducted business within the State of New York, maintain minimum contact herein and are subject to the jurisdiction of the courts of the State of New York.

3.    Venue is proper herein as the subject matter of this lawsuit involves a land contract of a certain parcel located in the Town of Warwick, County of Orange, State of New York, which is within the jurisdiction of the Southern District of New York.

4.    The amount of controversy herein in alleged to be greater than $75,000.

5.    The Court has diversity jurisdiction of this matter pursuant to 28 USC §1332.

## FACTS

1.    On or about October 16, 2001, plaintiff and defendants entered into a contract for land whereby defendants, as Seller,

3

would sell to plaintiff, as purchaser, a certain peace of real property located on State Highway 17A in Warwick, New York. See **Ex. A** (contract).

2.     Pursuant to the first amendment to the contract, effective as of June 20, 2003, closing was to take place on or before July 30, 2004 subject to the purchaser obtaining development approvals. See **Ex. B** (amendment).

3.     Pursuant to the first amendment, there were to be four 90-day extension periods whereby closing would be postponed until July 30, 2004, if needed for purchasers to gain approvals. Purchaser was to pay Seller $65,000 for each extension granted. As specifically agreed, said money was to be paid "in addition" to the contract price.

4.     Pursuant to the second amendment, effective July 29, 2004, there were to be twelve 30-day extensions of the closing date prior to July 30, 2005. Purchaser was to pay $10,000 for each extension. The amendment did not express that said money was "in addition" to the contract price. Therefore, it was on account of the purchase price. See **Ex. C** (second amendment).

5.     Pursuant to the third amendment, effective July 29, 2005, there were to be five 30-day extensions of the closing date prior to December 31, 2005. Purchaser was to pay $10,000 for each extension. The amendment did not express that said money was "in addition" to the contract price. Therefore, it was on account of

4

the purchase price.  See **Ex. D** (third amendment).

6.  Pursuant to the fourth amendment, effective December 20 2005, there were to be twelve 30-day extensions of the closing date prior to December 31, 2006.  Purchaser was to pay $10,300 for each extension.  As specifically agreed, said money was to be paid "in addition" to the contract price.  See **Ex. E** (fourth amendment).

7.  Pursuant to the fifth amendment, effective December 31, 2006, there were to be six 1-month extensions of the closing date prior to June 30, 2007.  Purchaser was to pay $10,300 for each extension.  As specifically agreed, said money was to be paid "in addition" to the contract price.  See **Ex. F** (fifth amendment).

8.  Pursuant to the sixth amendment, effective June 30, 2007, there were to be three 1-month extensions of the closing date prior to September 30, 2007.  Purchaser was to pay $10,300 for each extension.  As specifically agreed, said money was to be paid "in addition" to the contract price.  See **Ex. G** (sixth amendment).

9.  Pursuant to the seventh amendment, effective September 29, 2007, there were to be five consecutive 30-day extensions of the prior to February 1 2008.  The closing date was to be April 15, 2008.  Purchaser was to pay $10,300 for each extension.  As specifically agreed, said money was to be paid "in addition" to the contract price.  See **Ex. H** (seventh amendment).

10.    Pursuant to the eighth amendment, effective March 14, 2008, there were to be six consecutive 1-month extensions of the closing date prior to September 15, 2008.  Purchaser was to pay $10,300 for each extension.  As specifically agreed, said money was to be paid "in addition" to the contract price.  See **Ex. I** (eighth amendment).

11.    Pursuant to the eighth amendment, time was made the essence and no conditions would postpone or delay the closing other than defendants not being able to deliver marketable title.

12.    As the contract provided, in order to close on the property, plaintiff was required to obtain approvals from the Town and the Planning Board, including for a water district.

13.    During the application process, an adjacent landowner commenced an action against the Planning Board of the Town of Warwick, the Board of the Town of Warwick, BCM Development (Plaintiff) and Peter Oprandy as trustee of the Oprandy Trust (Defendant), as a challenge to certain preliminary approvals which were issued.

14.    As a result of the lawsuit, the Town of Warwick, the Planning Board of Warwick, and plaintiff for all intents and purposes were unable to proceed with the necessary approvals for an 18-month period, resulting in a moratorium.

15.    Paragraph 5 of the Rider to the original contract states "in the event of a moratorium, any period in which the applicant

6

cannot proceed because of the moratorium will not count toward any period provided herein." See **Ex. J** (Rider). The 18-month delay represented a moratorium in fact.

16.   On September 4, 2008, plaintiff, through its attorney, advised defendants' attorney that they were ready to close, pursuant to the eighth amendment, on September 15, 2008 with plaintiff owing defendants a balance of $1,382,400. See **Ex. K** (letter).

17.   To date, a closing has not taken place.

18.   Pursuant to clause 24 of the contract, plaintiff, as purchaser, has a lien on the subject property for all money paid on account of the contract if there is a breach of the contract through no fault of its own.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

1.   Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.   As a result of the contract and/or the amendments thereto, the defendants received the sum of $180,000 paid by plaintiff in good faith, during the 18-month period of the aforementioned litigation, pursuant to the amendments to extend the time in which to close.

3.   The payments made during the 18-month period were

7

equivalent and/or tantamount to the moratorium clause set forth in paragraph 5 of the rider to the contract. Accordingly, plaintiff is entitled to an $180,000 credit pursuant to the terms and provisions of the moratorium clause, which defendants have refused to recognize prior to closing.

4.   Plaintiff has duly requested and/or demanded that the defendants forthwith return the aforementioned sum of money during the moratorium period and/or give plaintiff credit for same at closing.

5.   Notwithstanding the aforesaid demands and the entitlement of the plaintiff to the credit, defendants have wrongfully failed and refused to turn the same over to the plaintiff and refused to close title for the correct consideration, as a result of which damages continue to be sustained.

## SECOND CLAIM FOR RELIEF

1.   Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.   Pursuant to the second and third amendments to the contract, defendants received $170,000 from plaintiff, representing 17 payments of $10,000 for each of the 17 extensions as allowed for by way of the amendments. Said amendments were not defined as the money being "in addition" to the contract price.

3.   As other amendments specifically call for the payments

8

being "in addition" to the contract price, the plain meaning of the second and third amendments entitles plaintiff to a credit.

4.    Plaintiff has duly requested and/or demanded that the defendants forthwith return the aforementioned sum of money and/or give a credit for these payments against the purchase price.

5.    Notwithstanding the aforesaid demands and the entitlement of the plaintiff to the credit, defendants have wrongfully failed and refused to close title for the correct consideration and/or turn the same over to the plaintiff, as a result of which damages continue to be sustained.

## THIRD CLAIM FOR RELIEF

1.    Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.    Plaintiff was ready, willing and able to close on said contract on September 15, 2008; defendants refused to close on said date.

3.    The foregoing conduct, actions and/or inactions of the defendants represent a breach of contract, and as a result thereof, plaintiff has suffered a loss of approximately $1,700,000, representing all the monies paid on account of the contract price as well as monies paid to gain the necessary approvals on the subject property and have further lost their anticipated profits.

9

## FOURTH CLAIM FOR RELIEF

1.   Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.   Defendants' failure to recognized the aforementioned credits to the purchase price also represents a breach of contract, and as a result thereof, plaintiff has suffered substantial monetary damages.

## FIFTH CLAIM FOR RELIEF

1.   Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.   Plaintiff has expended a substantial amount of monies with the expectation that the contract would be performed by defendants.

3.   Allowing defendants to retain these payments without complying with the contract would be unjust under the circumstances and would constitute unjust enrichment.

## SIXTH CLAIM FOR RELIEF

1.   Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.   At all relevant times stated herein, defendants were obligated, in entering into and performing the contract in

10

question, to perform the same in good faith, deal fairly with the plaintiff in performing and/or enforcing the terms of the agreement, and to act fairly and honestly towards the plaintiff and/or not to do anything that would have affected or destroyed the rights of the plaintiff to receive the benefits of the contract entered into prior to closing of title.

3.     The foregoing conduct, actions and/or inactions of the defendants represent a breach of the Implied Covenant of Good Faith and Fair Dealing which existed between the parties, as a result of which the damages alleged have been sustained.

### SEVENTH CLAIM FOR RELIEF

1.     Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2.     Upon information and belief, a title search on the subject property revealed certain exceptions in the title search with respect to easements, which would have precluded defendants from conveying insurable and marketable title, as required by the contract.

3.     As defendants were not ready, willing and able to deliver insurable and marketable title at the time of the stated closing, they are in breach of contract.

4.     As a result of such breach, plaintiff has suffered a substantial loss and damages as previously alleged, together with

11

loss of anticipated profits.

## EIGHTH CLAIM FOR RELIEF

1. Plaintiff, BCM DEVELOPMENT, LLC, repeats and realleges each and every allegation as set forth above.

2. Plaintiff has expended a substantial amount of monies with the expectation that the contract would be performed by defendants.

3. Defendants have defaulted under the contract as set forth above, and, therefore, plaintiff is entitled to a lien on the subject property pursuant to the terms and provisions of clause 24 of the contract.

## PRAYER FOR RELIEF

Plaintiff, BCM DEVELOPMENT, LLC., respectfully requests that the Court:

A. Grant damages to the plaintiff in the amount of $180,000, representing a credit to which plaintiff is entitled pursuant to the moratorium clause of the rider to the contract for the 18-month period whereby approvals could not be secured;

B. Grant damages to plaintiff in the amount of $170,000, representing the monies paid to defendants for the 17 extensions pursuant to the second and third amendments to the contract;

C. Grant damages to plaintiff in the amount of

12

$1,700,000 representing the monies paid to defendants on the contract price as well as monies paid to secure the necessary approvals on the subject property;

   D. Grant additional damages for loss of profits;

5. Grant plaintiff a lien on the subject property in accordance with the contract for all money paid on account of the contract to date and;

   E. Grant such other and further relief as this Court may deem just, equitable, and necessary, including compelling defendants to close title for the required price pursuant to the contract.

## DEMAND FOR TRIAL BY JURY

  Plaintiff hereby demands trial by jury on all of the above issues.

       Respectfully submitted,


       DOMENICA D. HART
       THE EPSTEIN LAW FIRM, P.A.
       340 West Passaic Street
       Rochelle Park, NJ 07662
       Telephone: 201-845-5962
       Fax: 201-845-5973
       Email:
       ddhart@theepsteinlawfirm.com
       Attorney for Plaintiff

Dated:  October 8, 2008

Exhibit A

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

~~Residential~~ Contract of Sale

**Contract of Sale** made as of ~~September~~ Oct 16 , 2001 ~~19~~ BETWEEN

OPRANDY TRUST
Address: 1229 Stonegate Way, Crozet, Virginia 22932
Social Security Number/Fed. I. D. No(s):

hereinafter called "Seller" and

BCM DEVELOPMENT COMPANY, LLC
Address: 576 Valley Road #301, Wayne, NJ 07470
Social Security Number/Fed. I. D. No(s):

hereinafter called "Purchaser".

**The parties hereby agree as follows:**

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: North side of St. Hwy 17A being 175 (+/–) acres
Tax Map Designation: part of 44-1-50.224 Tn Warwick

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

~~**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).~~

Excluded from this sale are furniture and household furnishings ~~and~~

~~**3. Purchase Price.** The purchase price is~~ $
payable as follows:
(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): $

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $

(c) by a purchase money note and mortgage from Purchaser to Seller: $

(d) balance at Closing in accordance with paragraph 7: $

~~**4. Existing Mortgage.** (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with~~

~~interest at the rate of percent per annum, in monthly installments of $ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**5. Purchase Money Mortgage.** (Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form of, standard or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than percent per annum and the total debt service thereunder shall not be greater than $ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6. Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall ~~(not)~~ (Delete if inapplicable) hold the Downpayment in an interest-bearing account for the benefit of

be paid to the party entitled to the Downpayment and the party receiving ~~the interest shall pay any income tax thereon~~. ~~If interest is not held for the benefit of the parties~~, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $            ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

~~8. Mortgage Contingency. (Delete if inapplicable) The obligations~~ of Purchaser hereunder are conditioned upon issuance on or before                    , 19    , (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $            or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed        or initial adjustable rate of interest not to exceed        for a term of at least        years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither

party shall have any further rights against, or obligations or liabilities to the other by ~~reason of this contract, except that the Down-payment~~ shall ~~promptly be~~ refunded ~~to Purchaser and except as~~ set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued ~~as of the date hereof~~ by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

~~(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing~~

**11. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

~~(iv) The Premises are not affected by any exemptions or abatements of taxes; and~~

(v) Seller has been known by no other name for the past ten years, ~~except~~

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as    any title company licensed to do business in NYS    shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a   b&s deed w/cov agst grantor's acts    deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

tine of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, ~~(ii) a certificate by the~~ Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of Luke Charde, 23 West Street, Warwick, NY

at                                 o'clock on                     19

or, upon reasonable notice ~~(by telephone or otherwise) by Purchaser, at the office of~~

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

~~(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that same was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a                     family dwelling at the date of Closing.~~

(c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"); or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorneys' fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.

(d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(e) ~~The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom-clean condition, vacant and free of leases or tenancies, together with keys to the Premises.~~

~~(f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.~~

~~(g) If the Premises are a one-or-two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke-detecting alarm device or devices.~~

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, ~~water charges and sewer rents~~, on the basis of the fiscal period for which assessed; (ii) ~~fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.~~

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

a reading to a date not more than 30 days before Closing, ~~and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.~~

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title-insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, ~~by registered or certified mail, postage prepaid, or~~ ~~(b) delivered in person or by overnight courier, with receipt acknowledged,~~ to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice (except as otherwise provided in this contract) shall be deemed given on the third business day following the ~~date of mailing~~ the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by ~~overnight courier shall be deemed given when delivered~~

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs,

agreement contained in this paragraph. The provisions of this paragraph shall survive the Closing or the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

OPRANDY TRUST

By: _____

_____ Seller

_____ Seller

BCM DEVELOPMENT COMPANY, LLC

By: _____

_____ Purchaser

_____ Purchaser

Attorney for Seller:

LUKE CHARDE, ESQ.
23 West STreet
Warwick NY 10990

Address:

Tel.: 986 3700     Fax:

Attorney for Purchaser:

ROBERT W. FINK, ESQ.
110 Murray Avenue POB 900
Goshen NY 10924

Address:

Tel.:   294 9721     Fax:   294 3131

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

_____   Escrowee

LUKE CHARDE, ESQ.

## Contract of Sale

TITLE NO.

PREMISES

Section
Block
Lot
County or Town
Street Number Address

TO



FIDELITY NATIONAL TITLE
INSURANCE COMPANY OF NY

*INCORPORATED 1928*

"*Appreciate the* Fidelity *Difference!*"
*Member New York State Land Title Association*

Exhibit B

# AMENDMENT TO CONTRACT OF SALE

This Amendment to a Contract of Sale originally dated October 16, 2001 between the Oprandy Trust, as Seller, and BCM Development Company, LLC, as Purchaser, shall supercede and replace any inconsistent or different term on the original Contract of Sale.

(1)  This Amendment shall be effective as of June 20, 2003;

(2)  The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be four (4) ninety-day extension periods. Purchaser shall pay to Seller the sum of Sixty-Five Thousand ($65,000.00) Dollars for each extension granted. The extension shall be deemed granted on the first day of the extension as indicated on the chart below. Notwithstanding anything provided in the original Contract dated October 16, 2001, the extensions granted are for obtaining development approvals and for closing the transaction, with the outside closing date being July 30, 2004. On or before the first day of each extension, the Purchaser shall pay to the Seller the sum of Thirty Thousand ($30,000.00) Dollars. Time shall be of the essence. Each of the Thirty Thousand ($30,000.00) Dollar payments shall be made payable to the Oprandy Trust and shall be non-refundable, except in the case of default by the Seller. The balance of Thirty-Five Thousand ($35,000.00) Dollars for each extension shall be paid by the Purchaser to the Seller at the closing of title and said sum shall be in addition to the original purchase price provided in the original contract.

In the event Purchaser fails to pay any extension fee then due, Seller may, at any time immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing and able to close on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the Contract. Seller may only require Purchaser to close prior to July 30, 2004 if Purchaser fails to pay any extension fee as herein provided.

| 90 Day Extension | Extension Period |
| --- | --- |
| #1 | Aug. 1 - Oct. 31, 2003 |
| #2 | Nov. 1 - Jan. 31, 2004 |
| #3 | Feb. 1 - April 30, 2004 |
| #4 | May 1 - July 30, 2004 |

Anything herein that may be construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such closing, Purchaser shall be required to pay any

Exhibit C

## SECOND AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different terms on the original contract of sale and the first amendment dated June 20, 2003.

1) This Amendment shall be effective as of July 29, 2004.

2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be twelve (12) thirty-day extension periods beginning July 31, 2004. Purchaser shall pay to Seller the sum of ten thousand dollars for each 30 day extension. Notwithstanding anything provided in the original contract dated October 16, 2001, and the amendment dated June 20, 2003, the extensions granted are for obtaining development approvals and for closing the transaction, with the outside closing date being July 30, 2005. Time shall be of the essence. Each of the ten thousand dollar ($10,000) payments shall be made to the Oprandy Trust and shall be non-refundable except in the case of default by the Seller. Each of the ten thousand dollar ($10,000) payments shall be due on the first of the month beginning with the first payment due on August 1, 2004.

In the event Purchaser fails to pay any extension fee then due, Seller may, at any time immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing and able to close on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the Contract.

Anything herein that may be construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such closing, Purchaser shall be required to pay any extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 7th day of July, 2004.

Oprandy Trust                                   BCM Development Company, LLC

BY: _____          BY: _____
Pete Oprandy, Trustee - Seller              Joseph ..., Managing Member - Purchaser

Exhibit D

## THIRD AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different term on the original contract of sale and the first amendment dated June 20, 2003 and a second amendment dated July 9, 2004.

1) This Amendment shall be effective as of July 29, 2005.
2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be five (5) thirty-day extension periods beginning July 31, 2005. Purchaser shall pay to Seller the sum of ten thousand dollars for each 30 day extension. Notwithstanding anything provided in the original contract dated October 16, 2001, and the amendments dated June 20, 2003 and July 9, 2004, the extensions granted are for obtaining development approvals and for closing transaction with the outside closing date being December 31, 2005. Time shall be of the essence. Each of the ten thousand dollar ($10,000) payments shall be made to the Oprandy Trust and shall be non-refundable except in the case of default by the Seller. Each of the ten thousand dollar ($10,000) payments shall be due on the first of the month beginning with the first payment due on August 1, 2005.

In the event Purchaser fails to pay any extension fee then due, Seller may, at anytime immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing, and able to close on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the contract.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such closing, Purchaser shall be required to pay any extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 10th day of May, 2005.

Oprandy Trust

By: _____
Paul Oprandy, Trustee – Seller

BCM Development Company, LLC

By: _____
Joseph Millisoln – Managing Member -Purchaser

Exhibit E

# FOURTH AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 and to a third amendment dated May 10, 2005 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supersede and replace any inconsistent or different term on the original contract of sale and the first amendment dated June 20, 2003 and a second amendment dated July 9, 2004 and the third amendment dated May 10, 2005.

1) This Amendment shall be effective as of December 20, 2005. *one month*
2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be twelve (12) ~~thirty day~~ extension periods beginning December 31, 2005. Purchaser shall pay to Seller the sum of ten thousand dollars for each 30 day extension. Notwithstanding anything provided in the original contract dated October 16, 2001, and the amendments dated June 20, 2003 and July 9, 2004, and May 10, 2005 the extensions granted are for obtaining development approvals and for closing transaction with the outside closing date being December 31, 2006. Time shall be of the essence. Each of the ten thousand dollar ($10,000) payments shall be made to the Oprandy Trust and shall be non-refundable except in the case of default by the Seller. Each of the ten thousand dollar ($10,000) payments shall be due on the first of the month beginning with the first payment due on January 1, 2006. *The payments for the extension are in addition to the purchase price provided in the original contract* In the event Purchaser fails to pay any extension fee then due, Seller may, at anytime immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing, and able to close on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the contract.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such closing, Purchaser shall be required to pay any extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 25th day of October, 2005.

Oprandy Trust

By: *[signature]*
Pete Oprandy, Trustee – Seller

BCM Development Company, LLC

By: *[signature]*
Joseph Millstein – Managing Member – Purchaser

Exhibit F

## FIFTH AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 and a third amendment dated May 10, 2005 and a fourth amendment dated October 25, 2005 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different terms on the original contract of sale and all of the amendments referenced above.

1) This Amendment shall be effective as of December 31, 2006.

2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be six (6) ~~thirty day~~ extension periods beginning January 1, 2007. Purchaser shall pay to Seller the sum of ten thousand three hundred dollars ($10,300) for each 30 day extension with the outside closing date being June 30, 2007. Time shall be of the essence. Each of the ten thousand three hundred dollar ($10,300) payments shall be made to the Oprandy Trust and shall be non-refundable except in the case of default by the Seller. Each of the ten thousand three hundred dollar ($10,300) payments shall be due on the first of the month beginning with the first payment payable by January 1, 2007. *THE PAYMENT FOR THE EXTENSIONS ARE IN ADDITION TO THE PURCHASE PRICE PROVIDED IN THE ORIGINAL CONTRACT.*

For granting the extensions, Purchaser shall pay to Seller a one time fee of ten thousand eight hundred dollars ($10,800) prior to January 1, 2007. In addition, Purchaser will also also pay a fee of five thousand seven hundred ($5,700) that will be due at closing.

In the event Purchaser fails to pay any extension fee then due, Seller may, at any time immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing, and able to close, on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the contract.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such a closing, Purchaser shall be required to pay an extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 29th day of November, 2006.

Oprandy Trust                                        BCM Development Company, LLC

By: _____                By: _____
Peter Oprandy, Trustee- Seller                    Joseph Millstein- Managing Member-Purchaser

Exhibit G

## SIXTH AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 and a third amendment dated May 10, 2005 and a fourth amendment dated October 25, 2005 and the fifth amendment dated 11/29/06 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different terms on the original contract of sale and all of the amendments referenced above.

1) This Amendment shall be effective as of June 30, 2007.

2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be three (3) one month extension periods beginning July 1, 2007. Purchaser shall pay to Seller the sum of ten thousand three hundred dollars ($10,300) for each 30 day extension with the outside closing date being September 30, 2007. Time shall be of the essence. Each of the ten thousand three hundred ($10,300) payments shall be made to the Oprandy Trust and shall be non-refundable except in the case of default by the Seller. Each of the ten thousand three hundred dollar ($10,300) payments shall be due on the first of the month beginning with the first payment payable by July 1, 2007. The payment for the extensions are in addition to the purchase price provided in the original contract.

In addition, Purchaser will also pay a fee of five thousand seven hundred ($5,700) that will be due at closing.

In the event Purchaser fails to pay any extension fee then due, Seller may, at any time immediately thereafter, give notice to Purchaser to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Seller's notice to Purchaser to close. If Purchaser is not ready, willing, and able to close, on such date, time hereby being made of the essence, then Seller may avail itself of any remedies available under the contract.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such a closing, Purchaser shall be required to pay an extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 4th day of April, 2007.

Oprandy Trust                                    BCM Development Company, LLC

By _____                  By _____
   Peter Oprandy, Trustee- Seller                   Joseph Millstein- Managing Member-Purchaser

Exhibit H

## SEVENTH AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 and a third amendment dated May 10, 2005 and a fourth amendment dated October 25, 2005 and the fifth amendment dated 11/29/06, and the sixth amendment dated April 4, 2007 along with the modification to the sixth amendment dated June 29, 2007 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different terms on the original contract of sale and all of the amendments referenced above.

1) This Amendment shall be effective as of September 29, 2007.

2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to obtain the development approvals as provided in the original contract and to close the transaction. There shall be five (5) consecutive one month extension periods beginning October 1, 2007 and ending February 1, 2008. Purchaser shall pay to Seller the sum of ten thousand, three hundred dollars ($10,300) for each 30 day extension. Each of the ten thousand three hundred dollar ($10,300) payments will be due and payable at closing. The payment for the extensions are in addition to the purchase price provided in the original contract.

3) In addition the thirty thousand nine hundred dollars ($30,900) that was due on September 30, 2007 will be due and payable at closing. These monies are also in addition to the purchase price.

4) The outside closing date for the above extension will be April 15, 2008. Time being of the essence. There will be no conditions that can postpone or delay the closing beyond April 15, 2008 other than the Oprandy Trust not being able to deliver marketable title.

5) Prior to closing if Seller's real estate taxes are increased because of Seller's loss of farmland assessment classification, Purchaser agrees to reimburse Seller for the increase that Seller incurs.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such a closing, Purchaser shall be required to pay an extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 29th day of September 2007.

Oprandy Trust                                    BCM Development Company, LLC

By:                                              By:
Peter Oprandy, Trustee Seller                    Joseph Militello - Managing Member-Purchaser

Exhibit I

## EIGHTH AMENDMENT TO CONTRACT OF SALE

This amendment to a contract of sale originally dated October 16, 2001 and to an amendment dated June 20, 2003 and to a second amendment dated July 9, 2004 and a third amendment dated May 10, 2005 and a fourth amendment dated October 25, 2005 and the fifth amendment dated 11/29/06, and the sixth amendment dated April 4, 2007 along with the modification to the sixth amendment dated June 29, 2007 and the seventh amendment dated September 29, 2007 between the Oprandy Trust as Seller and BCM Development Company, LLC as Purchaser shall supercede and replace any inconsistent or different terms on the original contract of sale and all of the amendments referenced above.

1) This Amendment shall be effective as of March 14, 2008.
2) The Seller hereby grants extensions of time, as provided herein, to allow the Purchaser to close the transaction. There shall be six (6) consecutive one month extension periods beginning March 1, 2008. Purchaser shall pay to Seller the sum of ten thousand, three hundred dollars ($10,300) for each 30 day (one month) extension with the outside closing date being September 15, 2008. Each of the ten thousand, three hundred dollar ($10,300) payments shall be made to the Oprandy trust and shall be non-refundable except in the case default by the seller. Each of the ten thousand three hundred dollar ($10,300) payments shall be due on the 1st of the month, with the exception of the first payment which was paid on March 11, 2008. The payments for the extensions are in addition to the purchase price provided in the original contract.
3) The outside closing date for the above extension will be September 15, 2008. Time being of the essence. There will be no conditions that can postpone or delay the closing beyond September 15, 2008 other than the Oprandy Trust not being able to deliver marketable title.
4) Each of the $10,300 monthly extension payments that were to be paid from July 1, 2007 through February 1, 2008 will be due and payable at closing. Therefore, there will be $82,400 due at closing. These monies are also in addition to the purchase price.
5) Prior to closing, if Seller's real estate taxes are increased because of Seller's loss of farmland assessment classification, Purchaser agrees to reimburse Seller for the increase that Seller incurs.

Anything herein that maybe construed to the contrary notwithstanding, it is understood and agreed that Purchaser may waive the extension periods provided for above and require Seller to close at a mutually agreed upon time and date not to exceed fifteen (15) days from the date of Purchaser's notice to Seller to close. At such a closing, Purchaser shall be required to pay an extension fee then due.

All other terms and conditions of the original contract dated October 16, 2001 shall remain in full force and effect except as explicitly modified herein.

In WITNESS WHEREOF, the parties have signed their names this 15th day of March 2008.

**Oprandy Trust**

By: _____
Peter Oprandy, Trustee - Seller

**BCM Development Company, LLC**

By: _____
Joseph Millstein - Managing Member - Purchaser

Exhibit J

OPRANDY TRUST, SELLER
AND
BCM DEVELOPMENT COMPANY, LLC, PURCHASER
DATED THE *16* DAY OF ~~SEPTEMBER~~, 2001
*October*

NOTWITHSTANDING ANYTHING TO THE CONTRARY OR INCONSISTENT HEREWITH
IN THE CONTRACT & SELLER'S RIDER, THE PARTIES AGREE AS FOLLOWS:

1.    **Feasibility Study.**    Purchaser shall have a period of thirty (30) days from adoption of the new Warwick Zoning Code to complete a Feasibility Study. Should Purchaser determine, in its sole discretion, that the property is unsuitable for its intended use, Purchaser may terminate the Contract of Sale, upon notice to Seller, given at any time before or on or about said date, whereupon the obligations of the parties shall cease and the escrow monies returned to Purchaser.

2.    **Approvals.**    The Contract of Sale will be contingent upon Purchaser, at its sole cost and expense, obtaining both the preliminary and final subdivision approval for a minimum of forty-five (45) single family residential building lots, or such lesser number that Purchaser may accept. Purchaser will have 12 months from the appointment of a new Planning Board to obtain such approvals. If same are not obtained, despite Purchaser's due diligence, Purchaser may terminate the Contract, at which time the escrow monies will be returned, or obtain an extension of six (6) months, by paying an additional $25,000.00 directly to Seller, which $25,000.00 will be applicable to the purchase price. The extension fee of $25,000.00 will be non-refundable unless Seller defaults.

3.    **Title.**    Purchaser shall order a preliminary title certificate upon receipt of a a fully executed copy of the contract and on or about one week from receipt note what title exceptions are reasonably deemed acceptable and not acceptable. If Seller chooses not to remedy the exceptions deemed objectionable, Purchaser may terminate the Contract. Seller will not willfully encumber the property after the date of the title report. Par. 21 of the Contract is understood to apply to any exception occurring subsequent to the date of the preliminary certificate. ( Par. 21(c)(i) and Par. 24 are understood to include all reasonable expenses of Purchaser incurred in connection with this Contract and subdivision of the land, but limited to a total of $1,000.00 unless the Seller willfully defaults)

4.    **Closing.**    Closing will take place on or about 60 days after Purchaser receives all unappealable approvals, including filing of the final map, for a minimum of 45 single family residential building lots, or such lessor number of building lots which was acceptable to Purchaser and for which preliminary approval was given (and one building permit) except the closing will take place no later than twenty-two (22) months  from the date of adoption of the new Code, subject to paragraph 5 of this Rider.

5.    **Moratorium.**    In the event of a moratorium, any period in which the applicant cannot proceed because of the moratorium will not count toward any period provided for herein.

6.    **Seller's Warranty.**    Seller warrants that they have no knowledge of any underground storage tanks on the premises or whether any have been removed or filled. Seller further warrants that they have no knowledge of any hazardous substances upon the premises or whether the premises

have at any time or are now the subject of any proceedings involving violation of applicable State and/or Federal regulations with regard to hazardous substances.  This warranty will survive closing of title.

7.     **Purchase Price**.  The purchase price is $1,725,000.00 payable as follows:

a. $25,000.00 upon execution of this Agreement (which amount has been deposited with the Broker\*)

b.  $25,000.00 upon completion of a satisfactory Feasibility Study\*

c. $1,200,000.00 by purchase money note and mortgage from Purchaser to Seller

d. $475,000.00 balance at closing

\* To be held in escrow pursuant to Par. 6 of the Contract

8.     The purchase price of $1,725,000.00 is based upon Purchaser obtaining approvals for not more than 45 lots.  If Purchaser obtains approvals for more than 45 single family residential building lots, for each additional lot over 45 lots, Purchaser will pay to Seller $32,500.00 which will be added to the amount of the mortgage.  The aforesaid notwithstanding, Purchaser will be under no obligation to attempt to obtain more than 45 lots.

9.     **Purchase Money Note and Mortgage**.  The proposed mortgage will be drawn on Blumberg Form M 667 or its equivalent.

a.  Amount: $1,200,000.00

b.  Term: 48 months

c.  Interest: Interest will be paid semi-annually at the rate of 6% per annum

d.  Amortization: Beginning 12 months from closing, and each 12th month thereafter, mortgagor will make a principal payment of $300,000.00, (plus interest.)  For each payment of $300,000.00, mortgagor will be entitled to releases of lots of mortgagor's choosing in accordance with Par. 9e.  If a portion of the payment on principal is not sufficient to obtain a release, mortgagor will have the option of paying the additional amount necessary to obtain a release or said amount will be carried over to when releases are next given.

e.  Releases: At closing, mortgagee will release 10 lots, or the mortgage will not cover 10 lots, of the mortgagor's choosing.  In addition, any roads or other improvements to be dedicated to the municipality will be released upon acceptance by the municipality.  Mortgagor will obtain releases of the remaining lots as follows:  Number of lots remaining divided into the remaining principal balance of the mortgage multiplied by 125%, plus interest. Notwithstanding the aforesaid, there shall be a minimum of 5 lots covered by the mortgage until the mortgage has been paid in full.

f. Purchaser will pay the sum of $150.00 for preparation of each release, regardless of the number of lots in the release.

g. Prepayment may be made in whole or in part at any time, without penalty, and releases obtained as hereinbefore provided.

h. Purchaser will have the option, at closing, of paying the entire purchase price, in lieu of giving back a purchase money first mortgage, or giving back a Note and Mortgage in a lesser amount.

10.    **Rollback Taxes.**    Any rollback taxes assessed to the property will be divided equally between the parties.   At closing an amount acceptable to the title company to omit the tax exception shall be placed in an interest bearing escrow account, to be held by Purchaser's attorney pursuant to paragraph 6 of the contract.

11.    **Engineering Studies.** Purchaser will submit copies of all engineering studies to Seller (at no cost to Seller) within 7 business days of Purchaser receiving the studies.

12.    **Notices.**    All notices shall be given to the parties at the addresses set forth in the Contract, or at such other address as may be requested in writing, and to their respective attorneys, Robert W. Fink, Esq., 110 Murray Avenue, POB 900, Goshen NY 10924 and Luke Charde, Esq., 23 West Street, Warwick, NY 10990, providing, however, that a notice given only to the attorney shall constitute effective notice.   Notices may be given by first class mail, facsimile, or overnight delivery, and will be deemed given on the date deposited or faxed.

OPRANDY TRUST
BY:

BCM DEVELOPMENT COMPANY, LLC
BY:

SELLER'S RIDER TO CONTRACT OF SALE BETWEEN OPRANDY TRUST, SELLER and BCM DEVELOPMENT COMPANY, LLC, PURCHASERS

1.  The terms of this rider supercede and replace any inconsistent or different terms on the attached printed form of contract or typed first rider to the contract containing paragraphs numbered 1 through 12.

2.  Paragraph 5 of the printed form of contract is amended to provide that the attorney's fees for the preparation of the mortgage will be $350.00.

3.  Paragraph 18d of the printed form of contract is amended to provide that the seller represents that there are no special assessments payable in annual installments regarding the subject property and in the event any assessments hereafter become due same shall be paid in full by purchaser except for any annual assessments which become due prior to the closing herein and said assessment will be paid by the seller.

4.  Paragraphs 21c and 24 of the printed form of contract are amended to provide that the seller shall have no obligation to pay for title charges, survey charges or survey inspection fees or updating of survey fees except in the event of default by the seller.

5.  Paragraph 27 of the printed form of contract is supplemented to provide that the broker is Joseph Green, Realtor.

6.  Paragraph 3 of the first rider is revised to delete the last sentence thereof.

7.  Paragraph 4 of the first rider is revised and supplemented as follows:

    a.  Delete words "and one building permit";

    b.  Add the following language: "In the event the Planning Board approves less than 45 single family residential building lots for preliminary approval and in the further event the purchaser proceeds toward final approval and/or fails to cancel this contract because of the reduced number of lots within ten days of such approval, then purchaser shall be deemed to have accepted such lesser number of lots and same shall not be grounds for purchaser cancelling this contract of sale thereafter."

8.  Rider paragraph 9d in the first sentence delete the words "plus interest".  Interest shall be paid semi-annually during the term of the mortgage; in paragraph 9d delete the words "of mortgagor's choosing" and in paragraph 9e delete the words "of the mortgagor's choosing". At the end of paragraph 9e add the following language: "The lots to be released shall be as agreed between the parties and in the event they are unable to agree which lots are to be released the mortgagee shall have the right to choose every third lot to be released pursuant to the terms hereof; paragraph 9e at the end of the third sentence delete the words "plus interest"; paragraph 9c add at the end of the sentence the following language "on the unpaid principal balance due and outstanding at that time"

9.   Paragraph 12 of the first rider should be revised to provide that the address of Luke Charde is P.O. Box 712, Warwick, New York   10990 and the fax number of Luke Charde is (845) 986-3750 and the fax number of Robert W. Fink is (845) 294-3131.

10.   Paragraph 10 of the first rider is supplemented to provide as follows: The amount to be held in the interest bearing escrow account may be funded by payments received by the seller at closing and will be funded by payments from purchaser's separate funds over and above the amounts due under the terms of this contract.  Upon termination of the interest bearing escrow account the interest shall be divided evenly between seller and purchaser.

11.   Schedule A consisting of two pages describing the subject property is annexed as part of the contract.

12.   The purchaser shall have the opportunity during the pendency of this agreement, to enter upon the premises for the purpose of conducting soil or other tests required in connection with the purchaser's applications for subdivision approval hereinabove provided for, provided, however, that prior to the first such entry upon the premises, the purchaser or purchaser's agents shall procure and pay the premium for public liability insurance coverage of not less than $1,000,000.00 per occurrence, with a combined single limit for bodily injury and property damage liability. Said policy of insurance shall name the seller as an additional insured and a certificate of such insurance shall be furnished to the seller prior to the first such entry upon the premises by the purchaser and without such certificate no such entry shall be made. In the event that any such test shall require the alteration fo the premises to any extent, such as the digging of holes, the purchaser shall immediately restore the premises to the same condition as immediately preceding such test.

13.   Notwithstanding anything to the contrary elsewhere herein contained, no person, entities, or professionals, including but not limited to engineers and land surveyors, shall be engaged to perform services on behalf of the purchaser with respect to the premises, unless they shall first execute and deliver to seller, a writing acknowledging that they have been employed by the purchaser and will look exclusively to the purchaser for the payment of their fees and/or charges and waiving the right to file a lien against the subject premises (and the interest of the seller therein) unless and until title shall close pursuant to this agreement.

14.   The purchaser hereby agrees to indemnify and/or hold seller harmless against any and all loss, damages, costs and expenses, including but not limited to attorney's fees, that may be incurred by seller by reason of the filing of a mechanic's lien against the premises by any person or entity hired, engaged or employed by the purchaser to perform services and/or provide materials for the purchaser in connection with the purchaser's duties hereunder and the steps necessarily taken by or on behalf of the seller to discharge such mechanic's lien. The purchaser agrees to cause the discharge of any such lien within thirty days after the filing of same and notice to the purchaser of such filing. In the event that such mechanic's lien is not discharged within such thirty day period, in addition to any other right the seller may have, the seller may require the escrowee to discharge such lien from the escrowed funds in

his control and the purchaser hereby irrevocably authorizes the escrowee to make such payment. In the event purchaser fails to cause the discharge of any such lien within the thirty day period provided above and in the further event the escrowee discharges said lien by the payment of escrowed funds, such event shall be deemed a default in the terms of this contract by the purchaser.

15. In the event that the purchaser shall fail to obtain such development approvals within the period limited therefore hereunder, either party may thereafter exercise an option to cancel this agreement by written notice in accordance with the notice provisions of this agreement, and upon such cancellation all sums escrowed hereunder, less such sums as shall have been expended pursuant hereto, shall be returned to the purchaser upon the purchaser providing to the seller an affidavit that all persons and/or entities hired, engaged or employed by the purchaser to perform services and/or provide materials for the purchaser in connection with the purchaser's duties hereunder, have been paid in full for such services and/or materials, whereupon neither party shall have any further claim or right against the other.

16. It is understood and agreed that neither party shall record this agreement or cause same to be recorded in the Orange County Clerk's Office without the written consent of the other party, which consent shall not be unreasonably withheld. In the event purchaser desires to record this contract or a memorandum thereof, purchaser shall supply to escrowee a fully executed discharge thereof in recordable form, which shall be held in escrow by escrowee pending the lawful termination of the contract.

OPRANDY TRUST

BY: _____

BCM DEVELOPMENT COMPANY, LLC

BY: _____

Exhibit K

# The Epstein Law Firm
### A Professional Association
340 West Passaic Street
Rochelle Park, New Jersey 07662
http://www.theepsteinlawfirm.com

Barry D. Epstein *
Michael J. Epstein * ◊
April M. Gilmore ◊
Domenica D. Hart ◊ ✿

\* Certified by the Supreme Court of New Jersey
   as a Civil Trial Attorney

◊ Also Admitted in New York

✿ Also Admitted in Connecticut

Telephone: (201) 845-5962
Fax: (201) 845-5973

September 4, 2008

***Via Fax (845)986-3750***
***Regular Mail,***
***and Certified Mail, RRR***

Luke M. Charde, Jr., Esq.
19 West Street, Box 712
Warwick, New York 10990

     **Re:  *Oprandy Trust to BCM***

Dear Mr. Charde:

This office represents BCM Development Company, LLC, in connection with the above matter, and I have had an opportunity to review your letter of August 26, 2008, the underlying contract, and the eight (8) amendments which thereafter followed. In response to your position that time is of the essence for a closing of September 15, 2008, purchaser is ready, willing and able to close, pursuant to the contract and the various amendments, subject to its receipt of marketable title, as required under the contract, as well as an agreement on the appropriate amount due for the purchase price, subject to the usual closing adjustments for real estate taxes, etc.

According to our considered review of all of the documents, purchaser is entitled to a credit of $180,000, which represents the approximate 18 month period during which approvals could not go forward because of unanticipated litigation which was brought respecting the project. This 18 month delay was equivalent or tantamount to the moratorium defined in paragraph 5 of the original rider to the agreement. Accordingly, purchaser is entitled to a

# The Epstein Law Firm, P.A.

credit of $180,000 pursuant to the terms of this particular provision, as well as other facts and circumstances surrounding the 18 month delay.

In addition, in accordance with the terms and provisions of the second and third amendments to the contract of sale, all monies paid thereunder, were not defined as in addition to the purchase price, and thus, they were on account of the purchase price which entitles purchaser to an additional credit of $170,000. You will please note, that all other amendments specifically stated that any payments were in addition to the price. Thus, the plain meaning of these provisions entitles purchaser to this additional credit.

Based upon those calculations, the net price at this time is $1,300,000, plus and additional $82,400 as set forth in paragraph 4 of the eighth amendment to the contract of sale. This makes the total owing and due to seller at the time of closing $1,382,400. If you are prepared to close title on September 15, 2008, which includes the delivery of insurable and marketable title, please confirm the above purchase price within three (3) days of this letter. If you are not prepared to close as set forth above, we will consider your client to be in breach of contract and shall reserve any and all rights to bring a lawsuit in a court of competent jurisdiction for the damages sustained by my client.

For your further information, the damages that will be sought, by way of example and not by way of limitation, will be a return of all monies paid on account of the contract price of approximately $500,000 together with an additional claim of $1,200,000, which represents the costs incurred by my client in order to obtain the necessary approvals for the subject property, which approvals are owned by BCM Development and do not run with the land.

I trust that your client understands the severity of this situation and will take the necessary steps to comply with the above. In addition, you should further be advised, because of the tone of your letter of August 26, 2008, the letter to you of August 6, 2008 by BCM Development Company was simply a proposal to resolve the outstanding issues, in good faith without the necessity of litigation. As the letter indicates, BCM Development reserved any and all of its legal rights in the event that a lawsuit were to be commenced.

## The Epstein Law Firm, P.A.

    I am available to discuss this matter with you at your
convenience, however, your client needs to understand that any
response must be made forthwith.

                                          Very truly yours,


                                          BARRY D. EPSTEIN


BDE/ec

cc:  Alan Lipman, Esq. - (845)294-7889
     BCM Development - (973)956-1137