**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BCM DEVELOPMENT, LLC,

                                    Plaintiff,

            v.

PETER OPRANDY, as trustee of
the Oprandy Trust, and THE
OPRANDY TRUST,

                                    Defendants.

---

**ECF CASE**

Index No. 08 Civ. 9050 (CS)

**AFFIRMATION IN**
**OPPOSITION TO MOTION**
**RETURNABLE OCTOBER 3, 2011**

---

        JOSEPH MILLSTEIN, duly affirms and says under the penalties of
perjury:

        1.    I am a principal of BCM Development, LLC, the plaintiff
in the above matter, this Affirmation is based upon my personal
knowledge and information and is being submitted to this Honorable
Court in opposition to the instant motion whereby the defendants
seek the entry of a judgment dismissing this entire action "with
prejudice" based upon the submissions of counsel for said
defendants.

        2.    Rather than repeat the entire history of this
transaction, I would represent to the Court that a number of facts
are not in dispute, including but not limited to the original
Stipulation and Order Discontinuance (Exhibit A of defendant's
papers), the first Amendment to that Stipulation dated April 19,
2010 (Exhibit B of defendant's papers), and Exhibits C through H.

        3.    Because the facts before this Court have been received
from counsel for the defendants, as opposed to the defendants

themselves, I respectfully ask the Court to consider a number of factors which I am submitting based upon personal knowledge.

4.    I have been engaged in the residential real estate construction and development business for approximately 41 years. At this time, the residential real estate market and the forces currently surrounding it are unprecedented. As this Court knows from the history of this case, we originally entered into a contract for a subdivision in the Town of Warwick approximately 10 years ago. Since that time, the parties had to engage in a number of activities on a collaborative basis, including governmental applications, approvals and a lawsuit, by way of example. Because of a number of problems, some of which were unanticipated and unknown, the project was substantially delayed for reasons beyond our control. By the time some of the approvals obtained by us were in place, the feasibility of developing a 40-unit site became most problematic, if not impossible.    Thus, we entered into various Amendments, which required the payment of additional thousands of dollars on our part and which continued until the early part of this year.  We have also indicated to counsel for the defendants that we would bring the extension payments to date so that this matter could ultimately close, however, we reasonably requested a form of restructuring of certain provisions which was required in these economic times.  Instead of acting in good faith so that this matter could close,  as had been the case earlier, the defendants

2

have now unilaterally refused to accept any proposed changes, some of which are not substantial at all, and indeed they will not even personally speak to me or any of the other principals of BCM. Candidly, I respectfully submit that given the investment which has been made by BCM, this is not only unreasonable, but is not an action in good faith and I would ask the Court to take into consideration the legal arguments being submitted by my counsel on that point.

5.    In this regard and as a matter of equity, I would also respectfully request the Court to consider that BCM has paid in excess of $500,000 to the defendants already, aside from expending an additional $1.2M on account of the project, which brings the total above $1.7M.  Some of these facts were outlined in a letter by my counsel to Your Honor dated June 28, 2011, a copy of which is attached to this Affirmation (**Exhibit A**).  I verify all of the facts set forth therein.

6.    Most recently, a new issue developed which I would implore this Court to strongly take into consideration, before dismissing our action "with prejudice," which fact was not known to either the sellers or the undersigned.  For the Court's assistance, I am attaching hereto a copy of a letter dated October 2, 2003 (**Exhibit B**) which was sent by the Town of Warwick to the Orange County Department of Health.  This is a very critical piece of information as stated below.

3

7.  By way of explanation, subsequent to the contract being signed, which contract and closing were subject to various approvals, one of the approvals required by the Town of Warwick was the construction of a complete water system, at a substantial price. Up until the latter part of 2003, it was anticipated by all concerned, including defendants, that the water system for the subject property could only be implemented by the digging of individual wells for each of the 40 lots that would ultimately lead to the construction of 40 homes.  This would have been at a price of approximately $350,000 to $400,000 but, and more significantly, each well would have been dug as a house was being constructed, therefore, monies would have been paid out over a significant period of time, as opposed to a pre-construction requirement of $800,000 for a complete system.  At the time the letter of October 2, 2003 (**Exhibit B** attached) was written, we, as well as others, were advised that the State had changed the dissolved Uranium standards (MCL) to lower levels, therefore, the Bellvale Water System which was across the street from our property would no longer be in compliance.  Thus, the Town  approached BCM to construct a central water system for our project, the adjacent Gables project and another one at a price of $800,000.  This drastically affected and changed the economics of the project and required a commitment of an extraordinary amount of up-front

4

monies, as opposed to paying between $9,000 to $10,000 as each house was being constructed.

8.      However, two factors were recently brought to light which were not known by the seller or BCM respecting the water project. The new or proposed MCL standards never came to pass, therefore, all the time and effort, as well as expense, that went forward for several years from 2003 was based upon a mistaken fact which delayed obtaining approvals, delayed construction, delayed sales and revenues, and ultimately delayed the entire project. As a person engaged in real estate for a substantial period of time, I can say that if this mistaken fact had not occurred, it is likely that title would have closed years ago, before any litigation ensued.

9.      As a result of this unanticipated development, which I stated was based on a mistaken belief, another lawsuit was commenced in the early 2000's by another developer which not only named BCM as a party defendant, but the Town of Warwick and the Oprandy defendants as well. This is certainly something that no one anticipated in 2001, when the contract was signed. The thrust of this lawsuit was to allow the other developer to be part of this water project. While the litigation pended for approximately 18 months, the approval process came to a halt and all of this contributed to the situation where we are today. As matters turned out, during the litigation, neither Oprandy, the Town of Warwick,

nor BCM was aware that a new water project was not required because the MCL standards were never revised. For this reason alone, I respectfully submit to the Court that BCM should not be declared in default and the case should not be dismissed with prejudice.

10.   In essence and in summary, BCM submits to this Court that it should rule in an equitable and practical manner, taking into account what is happening today in our country. By way of example, it was reported in the media on September 2, 2011 that the single biggest problem with respect to our economy in terms of creating jobs is the real estate market. If our project can go ahead and 40 homes are constructed, that would be a positive. At present, the subject property is "under water."

11.   We seek an approximate nine month extension to complete this project. Defendants Oprandy have not been harmed to date and will not suffer any further harm if such an extension were to be granted.   As stated before, defendants Oprandy have received approximately $628,000 during the life of the contract from BCM. BCM has paid a $100,000 deposit to Oprandy and an additional $528,000 of extension fees, which translates to a rate of return of 4% to 5% per annum, which in today's financial world is excellent. If this case is dismissed, BCM would suffer a total loss of $1,828,000, which is catastrophic.

12.   Because we have learned that the MCL standards have not been lowered, we are now in a position to request the Town to

change the approvals to allow for 40 individual wells. That is why we need this additional nine months. If we are successful in obtaining such approval, it will have a major positive financial impact on our ability to close and undertake construction. Therefore, we again respectfully submit to this Court that it is only equitable, based upon this new information, to afford BCM the opportunity to apply to the Town to eliminate the central water system requirement and have it replaced with individual wells, as was originally planned. This will take approximately nine months. It will also benefit the defendants based upon the fact that if individual wells are allowed and no closing were to take place, they would have a more marketable property in today's environment.

13. BCM has performed substantially for the 10 years of this contract. We have obtained numerous approvals, fought a lawsuit and expended an extraordinary amount of monies. To request an extension of nine months from this Court before the case is dismissed is most reasonable under these circumstances. Additionally, the defendants have received approximately 60 payments over the life of the contract to date from BCM, none of which was ever late. If additional extension fees were required by virtue of this delay, they could be added to the mortgage taken back upon the closing of title.

14.   The undersigned and its witnesses regarding the facts set forth herein will be available and willing to testify to this Court respecting all issues raised herein.

Dated:  Rochelle Park, New Jersey
        September  γ|  , 2011

_____
JOSEPH MILLSTEIN

8

# Exhibit A

# The Epstein Law Firm
### A Professional Association
340 West Passaic Street
Rochelle Park, New Jersey 07662
http://www.theepsteinlawfirm.com

Barry D. Epstein *
Michael J. Epstein * ◇
April M. Gilmore ◇
Shannon Carroll
James L. Fant ◇

Telephone: (201) 845-5962
Fax: (201) 845-5973

\* Certified by the Supreme Court of New Jersey
        as a Civil Trial Attorney
◇ Also Admitted in New York

June 24, 2011

Honorable Cathy Seibel
United States District Court
Southern District of New York
Federal Building & United States Courthouse
300 Quarropas Street, Room 218
White Plains, NY  10601-4150

> **Re:  *BCM Development, LLC v. Peter Oprandy, et al.***
> ***Civil Action No: 08 cv 9050 (CS)***

Dear Judge Seibel:

This office represents BCM Development, which was the plaintiff in the above-captioned matter which resolved by way of a Stipulation of Settlement dated March 27, 2009, a copy of which was forwarded to you by defendant's counsel, William H. Mulligan, Jr. This letter is being submitted to Your Honor pursuant to the electronic mail message generated by the Court System in connection with a pre-motion conference which you have scheduled for July 15, 2011, at 11:30 a.m.  If possible and with consent of opposing counsel, I am requesting the conference be held at 9:00 a.m. because of personal plans already made on that date.

Preliminarily, it is acknowledged that subsequent to the original Stipulation, there was an amendment to the same on April 19, 2010 and a second amendment, both of which have been sent to you by Mr. Mulligan.  Noteworthy, BCM complied with all of the terms and provisions of the Stipulation and the two amendments through February 2011, however, it is our position that BCM has not defaulted, thus entitling the defendant to the entry of a judgment to dismiss the underlying action with prejudice.  Although this Court does have jurisdiction for the purpose of enforcing the

THE EPSTEIN LAW FIRM, P.A.                                    Page 2

Stipulation, the issue of whether there has been a material breach
by BCM subsequent thereto pertains not only to amendments to the
Stipulation, but to the underlying contract in question, which it
is submitted invoke issues that are somewhat beyond the Stipulation
itself.

    The Court should be aware that BCM has paid in excess of
$500,000 to the defendant, aside from expending an additional
$1,200,000 on account of this project, for a total of approximately
$1,700,000 for approvals.  However, various unanticipated issues
have arisen over the years which have necessitated that both
parties act in good faith with respect to the completion of the
contract.  BCM has continued to express its willingness to make
further extension payments so that this matter could ultimately
proceed to a closing of title so as to avoid a forfeiture, however,
the defendant has not acted consistent with its obligations
regarding the implied covenant of good faith, whereby the purchaser
(BCM) simply sought a restructuring of certain provisions of the
contract which would not have affected the total price.  The
defendant, The Oprandy Trust, has refused to even discuss this,
which is not only a breach of the implied covenant of good faith,
but further constitutes unreasonable conduct on its part.  When
this issue first arose, this office advised the defendant's real
estate attorney, in writing, on April 4, 2011 of a mechanism in
order to resolve the impasse.  In violation of its obligations, the
defendant refused and failed to even discuss a consummation of the
agreement, which was in the best interests of all parties and thus
avoid a default.  For Your Honor's assistance, enclosed is a copy
of our letter dated April 4, 2011 to that effect.  We also set
forth  proposals on April 27, 2011 to maintain the viability of
this contract.  It is, therefore, our position that BCM has taken
the appropriate steps to maintain the viability of this contract so
that a closing of title can ultimately take place.  In short, given
the extraordinary circumstances which have affected the residential
real estate market, some portions of the contract need adjustment.
It is a matter of common knowledge that this market is virtually at
an all time low.

    The basic law in a situation such as this is that a
declaration of default is a last resort and this Court has the
equitable powers to avoid an unnecessary forfeiture.  We will be
prepared to discuss this matter further with you on July 15, 2011.
Perhaps this is an appropriate matter for the Court to require
mediation or binding arbitration.

    Our prior proposals are preferable to a factual hearing to
determine the rights of the parties.

**THE EPSTEIN LAW FIRM, P.A.**                                    **Page 3**

Thank you for your kind attention.

Respectfully yours,

BARRY D. EPSTEIN
bdepstein@theepsteinlawfirm.com

BDE/rm
cc:  William H. Mulligan, Jr., Esq. (via email)

# Exhibit B

18/15/2003  11:32   8459879644                    BUILD:PLANN                            PAGE  82

# TOWN OF WARWICK

$BCM + Gables$

132 KINGS HIGHWAY
WARWICK, NEW YORK  10990

October 2, 2003

BUILDING & PLANNING DEPT(845) 986-1127
FAX NO.                              (845) 987-9644
BUILDING DEPT                   EXT. 258/260
PLANNING DEPT                  EXT 261
ENGINEER                          EXT 259

Greg A. Moore, PE
Orange County Department of Health
Environmental Health
124 Main Street
Goshen, NY 10924-2199

Re:    Gables - Realty Subdivision, Town of Warwick

Dear Mr. Moore:

The Gables Major Subdivision, consisting of 19 lots, is currently under review by the Town of Warwick
Planning Board.  Although the standard practice of the Department of Health is not to review subdivisions
until after receipt of Preliminary Approval, the Planning Board would request that you assist the applicant
and the Town by starting your review of the septic systems prior to formal Preliminary Plan Approval.

The Gables and the adjoining BCM subdivision are working with the Town to expand the Bellvale Water
System as soon as possible.  Although the Bellvale Water System currently meets drinking water
standards, new regulations will be in place by January 1, 2004 that will most likely make the Bellvale
System out of compliance for dissolved Uranium.  The most efficient and economical solution appears to
be to drill new sand and gravel wells on the BCM property and expand the present Bellvale system from
23+/- homes to 80+ homes with the addition of the Gables and BCM subdivisions.

The Planning Board is therefore requesting that the Department of Health review the septic system
designs and conduct the necessary field testing so that the expansion of the Bellvale Water System can go
forward as quickly as possible.  During the period that the OCDH would be reviewing the septic systems,
the Preliminary Plans will be finalized with respect to community wells, water mains, pumping equipment
and expansion of the storage facilities.  It is understood that any approval that may be granted by the
OCDH would not occur until after the water supply system is designed and complete Realty Subdivision
Plans are submitted to your department for review and approval.

We appreciate your cooperation with this process and if there are any questions, please feel free to contact
Jane Samuelson, our Town Engineer.

Sincerely yours,

Robert Bogdanski, Chairman
Warwick Planning Board

Mailed out on 10/2/03 to O.C.D.H.