UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BCM DEVELOPMENT, LLC,

                    Plaintiff,

        v.

PETER OPRANDY, as trustee of
the Oprandy Trust, and THE
OPRANDY TRUST,

                 Defendants.

**ECF CASE**

Index No. 08 Civ. 9050 (CS)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE RETURNABLE OCTOBER 3, 2011

---

**THE EPSTEIN LAW FIRM, P.A.**
Attorneys for Plaintiff
340 West Passaic Street
Rochelle Park, New Jersey 07662
(201)845-5962

On The Brief:

Barry D. Epstein, Esq.

Michael A. Rabasca, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 10

    POINT I

        DEFENDANTS' INTRANSIGENCE TOWARDS PLAINTIFF BCM'S
        REASONABLE REQUESTS TO RESTRUCTURE CERTAIN PROVISIONS OF
        THE PARTIES' AGREEMENT CONSTITUTES A BREACH OF THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CONTAINED
        IN ALL CONTRACTS UNDER NEW YORK LAW . . . . . . . . 10

    POINT II

        PLAINTIFF BCM IS NOT IN DEFAULT UNDER THE PARTIES' SECOND
        AMENDED STIPULATION DUE TO THE EXISTENCE OF A MUTUAL
        MISTAKE REGARDING SIGNIFICANT FACTS WHICH ARE FUNDAMENTAL
        TO THE PARTIES' AGREEMENT, AND BECAUSE BCM HAS
        SUBSTANTIALLY PERFORMED OVER THE LIFE OF THE CONTRACT
        . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    POINT III

        BASED ON THE MOVING PAPERS SUBMITTED BY DEFENDANT
        OPRANDY, IT WOULD BE INAPPROPRIATE FOR THE COURT DISMISS
        PLAINTIFF BCM'S COMPLAINT WITH PREJUDICE WITHOUT FIRST
        CONDUCTING AN EVIDENTIARY HEARING . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

511 West 232nd Owners Corp. v. Jennifer Realty Co.,
98 N.Y.2d 144 (2002) . . . . . . . . . . . . . . . . . . . 10

Erie v. Tompkins,
304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . 10

Hallock v. State of New York,
64 N.Y.2d 224 (1984). . . . . . . . . . . . . . . . . . . . 13

Jaffe v. Paramount Communications,
222 A.D.2d 17 (N.Y. App. Div. 1996) . . . . . . . . . . . . 11

Janowitz Bros. Venture v. 25-30 120th St. Queens Corp.,
75 A.D.2d 203 (N.Y. App. Div. 1980). . . . . . . . . . . . 14

Manhattan Motorcars, Inc. v Automobili Lamborghini, S.p.A.,
244 F.R.D. 204 (S.D.N.Y. 2007). . . . . . . . . . . . . . . 11

Post v. Killington, Ltd.,
2011 U.S. App. LEXIS 11121 (2d Cir. 2011). . . . . . . . . 10

True v. True,
63 A.D.3d 1145 (N.Y. App. Div. 2009). . . . . . . . . . . . 13

## INTRODUCTION

This motion represents nothing short of an improper attempt by Defendants Peter Oprandy, as trustee of The Oprandy Trust, and The Oprandy Trust (together "Oprandy") to capitalize on their repeated refusal to bargain in good faith. By way of background, Plaintiff BCM Development, LLC ("BCM") contracted to purchase real property from Defendant Oprandy with the intention of subdividing the parcel in question into smaller lots and constructing residential units. However, both the closing and the project itself have been significantly delayed due to several unforeseen issues. Although the parties were initially able to negotiate numerous amendments in the face of these substantial difficulties in order to preserve the viability of the contract, Defendant Oprandy eventually ceased bargaining in good faith which threatened Plaintiff's investment in the project. Accordingly, Plaintiff BCM initiated the instant litigation on or about October 22, 2008, asserting, inter alia, that Oprandy breached the terms of the contract and breached the implied covenant of good faith and fair dealing.

On or about March 31, 2009, the parties executed a "Stipulation and Order of Discontinuance," which resolved the parties' issues while also ensuring the essence of their agreement remained intact. Thereafter, the parties twice renegotiated the terms of the Stipulation in good faith in order to preserve the contract when its feasibility was uncertain due to continued

economic difficulties. Plaintiff BCM made all payments required required under the Stipulation and the two amendments through February 2011 and has paid Oprandy a total of $628,000 over the life of the contract.

Plaintiff's actions at this point have been taken to again ensure that the essence of the agreement remains intact. Currently, the residential real estate market is in the midst of an unprecedented downturn, the property at issue is "under water," and BCM has recently discovered the existence of a mutual mistake regarding significant facts which are fundamental to the parties' agreement. As such, some portions of the agreement must be adjusted to ensure the continued viability of the project. However, Defendant Oprandy has steadfastly refused to even discuss BCM's reasonable requests to renegotiate and restructure, and has instead filed the instant motion to dismiss Plaintiff's Complaint with prejudice.

Defendant Oprandy's motion to dismiss should be denied because Oprandy's stonewalling of BCM's reasonable and necessary requests to restructure certain provisions of the parties' agreement constitutes a breach of the implied covenant of good faith and fair dealing, which is contained in all contracts under New York law. Indeed, in these severe economic times, Defendant Oprandy's conduct is nothing short of unconscionable. Additionally, the Court should refrain from declaring Plaintiff BCM in default of the Stipulation

because BCM has recently discovered that, since 2003, both parties
have been operating under the mistaken belief that the subdivision
required an extremely costly central water system when a more cost-
effective individual well system would have conformed with state
regulations. BCM has also substantially performed over the life of
the parties' contract by obtaining numerous governmental approvals,
fighting a lawsuit, and expending over $1,800,000 to move the
project forward. (See Affirmation of Joseph Millstein, BCM's
managing principal).

Finally, it would be inappropriate for the Court to dismiss
Plaintiff BCM's Complaint with prejudice based on this sparse
motion record. Indeed, Defendant Oprandy's moving papers are
devoid of sufficient facts and any legal authority whatsoever which
supports Oprandy's demand for what amounts to a final disposition
with respect to all of BCM's claims. As such, it is respectfully
submitted that Defendant Oprandy's motion be denied or, at a
minimum, the Court conduct an evidentiary hearing to further
develop the record in this matter prior to rendering a decision
which could potentially cause BCM to sustain a loss in excess of
$1,800,000.

## STATEMENT OF MATERIAL FACTS

1.  Nearly ten years ago, Plaintiff BCM contracted to purchase real property located in Warwick, New York from Defendant Oprandy with the intention of subdividing the parcel into smaller lots and constructing approximately forty (40) residential units. See (Millstein Aff. ¶ 4).

2.  Pursuant to the contract, the closing on the real property at issue was subject to the parties obtaining various governmental approvals required by the Town of Warwick, including approval for the construction of a water system for the subdivision. (Millstein Aff. ¶ 7).

3.  At the time the parties entered into the contract, both BCM and Oprandy believed that the subdivision's water system would consist of individual wells for each of the forty (40) lots. (Id.)

4.  The parties anticipated that each individual well would only cost between $9,000 and $10,000. (Id.)

5.  Thus, the total estimated cost for the subdivision's water system was $350,000 to $400,000, which would be paid out over the life of the project as each individual unit was constructed. (Id.)

6.  Since BCM and Oprandy entered into the contract, the closing and, consequently, the construction project itself have been significantly delayed due to several "unanticipated and

4

unknown" issues, including problems with several of the required governmental approvals. (Millstein Aff. ¶ 4).

7.   On or about October 2, 2003, the Town of Warwick advised BCM and other interested parties that an adjacent property's water system did not comply with newly pending State regulations regarding the dissolved Uranium content in drinking water. <u>See</u> (Millstein Aff. ¶ 7; Millstein Aff. **Ex. B**).

8.   Because of the adjacent property's water system's non-compliance, the Town of Warwick requested that Plaintiff BCM instead construct a central water system which would serve the BCM subdivision as well as two other subdivisions. (Millstein Aff. ¶ 7).

9.   The estimated cost of the proposed central water system was $800,000, which would be paid up-front before construction of the individual units could commence. (<u>Id.</u>)

10.   Thereafter, another real estate developer filed a lawsuit against several parties including BCM, the Town of Warwick, and Oprandy, in which the plaintiff developer sought to be included in the proposed central water system project. (Millstein Aff. ¶ 9).

11.   This prior litigation regarding the proposed central water system project lasted for approximately eighteen months, and effectively brought the governmental approval process "to a

5

halt."   See   (Id.)

12.   These substantial unanticipated delays, in conjunction with
      the extreme economic downturn and consequential residential
      real estate market crisis, have caused the project at issue to
      become financially problematic, "if not impossible."   See
      (Millstein Aff. ¶ 4).

13.   On or about October 22, 2008, Plaintiff BCM commenced the
      instant litigation by filing an eight-count Complaint in this
      Court asserting various causes of action against Oprandy,
      including claims for breach of contract and breach of the
      implied covenant of good faith and fair dealing.

14.   On or about March 31, 2009, the parties entered into a
      "Stipulation and Order of Discontinuance" in order to resolve
      their differences and preserve the viability of the contract.
      See (Millstein Aff. ¶ 4; Mulligan Aff. **Ex. A**).

15.   Thereafter, the parties renegotiated the terms of the
      Stipulation and executed an "Amendment to the Stipulation and
      Order of Discontinuance" on or about April 19, 2010.
      (Mulligan Aff. **Ex. B**).

16.   On or about September 30, 2010, the parties again renegotiated
      the terms of the Stipulation executed a "Second Amendment to
      the Stipulation and Order of Discontinuance." (Mulligan Aff.
      **Ex. C**).

17.   Plaintiff BCM made all payments required under the Stipulation

and the two amendments through February 2011. (Millstein Aff. **Ex. A**).

18.  Over the life of the contract, Plaintiff BCM has made approximately sixty (60) timely payments to Defendant Oprandy totaling $628,000. (Millstein Aff. ¶ 5, 13).

19.  In all, Plaintiff BCM has expended over $1,800,000 on the project at issue, which includes the substantial payments made to Defendant Oprandy and approximately $1,200,000 in other project related expenses. (Millstein Aff. ¶ 5; Millstein Aff. **Ex. A**).

20.  The real property at issue is currently "under water." (Millstein Aff. ¶ 10).

21.  In February and March of 2011, Plaintiff BCM twice requested that the parties restructure and adjust certain provision of their agreement due to the continued economic difficulties plaguing the project. See (Millstein Aff. ¶ 4; Mulligan Aff. ¶ 8; Millstein Aff. **Ex. A**).

22.  On April 4, 2011, Plaintiff BCM's attorney advised Defendant Oprandy's real estate counsel in writing of BCM's continued desire to renegotiate the parties' agreement in good faith. (Mulligan Aff. **Ex. E**).

23.  More specifically, Plaintiff's attorney communicated BCM's willingness to immediately forward Oprandy $17,000 in extension fees for March and April 2011 if Oprandy agreed to

7

(1) attempt to negotiate a restructuring of the parties' existing contract without altering the contract price within thirty (30) days of Plaintiff's payment of the extension fees; and (2) submit to binding arbitration should the parties fail to reach an agreement. (Id.)

24. On April 27, 2011, Plaintiff BCM's attorney again reiterated BCM's continued desire to renegotiate certain portions of the agreement in good faith without reducing the contract price of the property. (Mulligan Aff. **Ex. G**).

25. Additionally, and most significantly, Plaintiff BCM has recently discovered that the revised State regulations regarding the dissolved Uranium content in drinking water never went into effect and, thus, the subdivision never actually required a central water system. (Millstein Aff. ¶ 8, 9).

26. As such, since 2003, both parties have expended a great deal of time and effort and have incurred substantial costs in connection with their efforts to preserve the essence of their agreement in the face of the numerous delays caused by the parties' mistaken belief that a central water system was necessary to move the project forward. (Millstein Aff. ¶ 8).

27. Joseph Millstein, principal of BCM, certifies that "it is likely that title would have closed years ago, before any litigation ensued" had the parties recognized the mistake.

(<u>Id.</u>)

28. Plaintiff BCM now simply requests a nine-month extension so that it can seek governmental approval to move forward with its initial plan to construct individual wells for each of the forty (40) lots, which is a necessary step to ensure the continued viability of the project. (Millstein Aff. ¶ 12).

29. BCM does not seek to alter the total price term for the property at issue, nor does it seek to deprive Defendant Oprandy of any additional extension fees due by virtue of the current impasse. <u>See</u> (Millstein Aff. ¶ 13; Millstein Aff. **Ex. A**).

30. Despite Plaintiff BCM's numerous good faith efforts to resolve the parties' differences and the existence of a significant mutual mistake regarding facts material to the Stipulation and the two subsequent amendments, Defendant Oprandy has outright refused to even discuss BCM's reasonable requests to restructure certain terms of the agreement. <u>See</u> (Millstein Aff. ¶ 4, 8).

## LEGAL ARGUMENT

### POINT I

**DEFENDANTS' INTRANSIGENCE TOWARD PLAINTIFF BCM'S REASONABLE REQUESTS TO RESTRUCTURE CERTAIN PROVISIONS OF THE PARTIES' AGREEMENT CONSTITUTES A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CONTAINED IN ALL CONTRACTS UNDER NEW YORK LAW.**

As a preliminary matter, Defendant Oprandy only cites one case, Post v. Killington, Ltd., 2011 U.S. App. LEXIS 11121 (2d Cir. 2011), a Second Circuit opinion citing and applying irrelevant Vermont law, in support of its motion. However, there is no dispute that the instant case arises out of a contract for the sale of real property located in Warwick, New York. As such, New York law governs this matter, and Post has absolutely no precedential value. See Erie v. Tompkins 304 U.S. 64 (1938)(holding that federal district courts hearing cases in diversity jurisdiction must apply both the applicable statutory and common law of the states in which they sit).

In New York, it is well recognized that every contract contains an implied covenant of good faith and fair dealing. 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002)(citing Smith v. General Acc. Ins. Co., 91 N.Y.2d 648, 652-653 (1998); Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389 (1995); Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 N.Y.2d 34, 45, rearg denied 30 N.Y.2d 880, cert denied 409 U.S. 875 (1972)).

The implied covenant of good faith and fair dealing prohibits a party to a contract from acting in any manner that would impede another party's ability to enjoy the fruits of the agreement regardless of whether the conduct at issue is forbidden by any express contractual provision. Jaffe v. Paramount Communications, 222 A.D.2d 17, 22-23 (N.Y. App. Div. 1996); see also Manhattan Motorcars, Inc. v Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 214 (S.D.N.Y. 2007)(covenant of good faith and fair dealing imposes an obligation on the parties to refrain from "intentionally and purposefully [doing] anything to prevent the other party from carrying out the agreement on his part.").

Although the implied covenant of good faith and fair dealing does not impose any obligations that would be inconsistent with the express terms of the contract, it does include "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Manhattan Motorcars, Inc., 244 F.R.D. at 214.

Here, Defendant Oprandy has undoubtedly violated the implied covenant of good faith and fair dealing. Initially, it should be noted that Plaintiff BCM commenced the instant litigation based in part on Oprandy's past conduct which contravened its obligations under the implied covenant. See (Compl.) Although the Stipulation and subsequent amendments temporarily resolved the parties' differences, Defendant Oprandy has once again breached the implied

11

covenant of good faith and fair dealing by refusing to even discuss BCM's numerous requests to make necessary adjustments to certain portions of the parties' agreement. See (Millstein Aff. ¶ 4, 8).

In February and March of 2011, Plaintiff BCM twice requested that the parties restructure and adjust certain provisions of their agreement. (Mulligan Aff. ¶ 8). Specifically, Plaintiff BCM seeks a nine-month extension to now obtain governmental approval to construct individual water wells for each of the forty (40) lots. (Millstein Aff. ¶ 12). None of the requested adjustments would affect the contract's price terms in any manner. (Millstein Aff. ¶ 13). Importantly, the requested restructuring is necessary to ensure the continued viability of the project because the residential real estate market is in the midst of an unprecedented crisis, the real property at issue is "under water," and BCM has recently discovered the existence of a mutual mistake regarding significant facts material to the parties' agreement. See (Millstein Aff. ¶ 4, 8, 9, 12; Millstein Aff. **Ex. A**).

On April 4, 2011, Plaintiff BCM's attorney advised Defendant Oprandy's real estate attorney in writing of BCM's continued desire to modify the parties' agreement in good faith. (Mulligan Aff. **Ex. E**). On April 27, 2011, Plaintiff's attorney again reiterated BCM's desire to preserve the essence of the parties' agreement by adjusting certain provisions without reducing the contract price of the property. (Mulligan Aff. **Ex. G**). Despite BCM's numerous good

faith efforts, Oprandy has steadfastly refused to even discuss BCM's reasonable and, frankly, necessary requests to restructure the agreement.  (Millstein Aff. ¶ 4, 8).

Oprandy's conduct constitutes an improper attempt to capitalize on their repeated refusal to bargain in good faith, and it is clearly intended to deprive BCM of its benefit under the parties' agreement and prevent BCM from performing its obligations under the agreement.  Under current economic conditions, Defendant Oprandy's conduct is nothing short of unconscionable.  Furthermore, Defendant Oprandy's conduct goes to its performance under the contract, which is part and parcel of the implied covenant of good faith and fair dealing.  Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's Complaint with prejudice.

## POINT II

**PLAINTIFF BCM IS NOT IN DEFAULT UNDER THE PARTIES' SECOND AMENDED STIPULATION DUE TO THE EXISTENCE OF A MUTUAL MISTAKE REGARDING SIGNIFICANT FACTS WHICH ARE FUNDAMENTAL TO THE PARTIES' AGREEMENT, AND BECAUSE BCM HAS SUBSTANTIALLY PERFORMED OVER THE LIFE OF THE CONTRACT.**

Stipulations of settlement are undoubtedly "favored by the courts and not lightly cast aside," Hallock v. State of New York, 64 N.Y.2d 224, 230 (1984).  However, a stipulation of settlement may be set aside "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, [mutual] mistake

or accident. . . ." See id. (citing Matter of Frutiger, 29 N.Y.2d 143, 149-150 (1971)).

In order for a party to set aside a stipulation of settlement based on the existence of a mutual mistake, "the mutual mistake must be material, i.e., it must involve a fundamental assumption of the contract." See True v. True, 63 A.D.3d 1145, 1147 (N.Y. App. Div. 2009)(citing Janowitz Bros. Venture v. 25-30 120th St. Queens Corp.,75 A.D.2d 203, 214 (N.Y. App. Div. 1980)). Additionally, proof of a mutual mistake "must be of the highest order" to justify relieving from the consequences of such a stipulation. Janowitz Bros. Venture, 75 A.D.2d at 215. Importantly, "[a] party need not establish that the parties entered into the contract because of the mutual mistake, only that the material mistake . . . vitally affects a fact or facts on the basis of which the parties contracted.'" True, 63 A.D.3d at 1147 (quoting Janowitz Bros. Venture, 75 A.D.2d at 214). This is the case here.

In this matter, both BCM and Oprandy initially believed that the subdivision's water system would consist of individual wells for each of the forty (40) residential lots which would cost approximately $9,000 to $10,0000 apiece. (Millstein Aff. ¶ 7). However, on or about October 2, 2003, BCM and Oprandy learned of the adjacent property's water system's non-compliance with pending State regulation concerning the dissolved Uranium content in drinking water, and, that the subdivision would likely require the

14

installation of a large central water system at a substantial up-front cost. See (Millstein Aff. ¶ 7; Millstein Aff. **Ex. B**). Since 2003, a great deal of time and effort have been expended, and substantial costs have been incurred in connection with numerous delays and other issues caused by the apparent need for a costly central water system. (Millstein Aff. ¶ 8).

However, Plaintiff BCM has recently discovered that the revised State regulations regarding the dissolved Uranium content in drinking water never went into effect. (Millstein Aff. ¶ 8, 9). Therefore, the subdivision never required an $800,000 central water system, and every action taken by the parties since 2003, including initiating and defending lawsuits and negotiating the Stipulation and the two subsequent amendments, have been based on this patently false belief. See (Millstein Aff. ¶ 8). Indeed, but for this mutual mistake, "it is likely that title would have closed years ago, before any litigation ensued." (Id.) Based on this mutual mistake alone, the Court should refrain from declaring BCM in default of the Stipulation.

Additionally, Plaintiff BCM has substantially performed under the parties' agreement. Over the course of the approximately ten years that the real estate contract at issue has been in existence, it is undisputed that BCM has obtained numerous governmental approvals, fought a lawsuit concerning the proposed central water system, and has expended a significant amount of monies in

15

furtherance of the project. Indeed, BCM has expended over $1,800,000 on the project, including approximately sixty (60) timely payments to Oprandy totaling $628,000, and approximately $1,200,000 in other project related expenses. (Millstein Aff. ¶ 5, 13; Millstein Aff. **Ex. A**).

Plaintiff BCM only seeks a nine-month extension so that it can obtain governmental approval to construct individual water wells for each of the forty (40) lots now that the mutual mistake has been discovered. (Millstein Aff. ¶ 12). Importantly, BCM does not seek to reduce the contract price for the property at issue, nor does it desire to deprive Oprandy of any additional extension fees due by virtue of the current impasse. (Millstein Aff. ¶ 13; Millstein Aff. **Ex. A**). The outstanding extension fees alluded to by Defendant's counsel are de minimis considering the totality of the circumstances in this case. Because the requested extension is necessary to ensure the continued viability of the project, and equity abhors forfeitures and defaults, the only equitable result under these circumstances is for the Court to deny Defendant Oprandy's motion to dismiss Plaintiff's Complaint with prejudice.

## POINT III

## BASED ON THE MOVING PAPERS SUBMITTED BY DEFENDANT OPRANDY, IT WOULD BE INAPPROPRIATE TO DISMISS PLAINTIFF BCM'S COMPLAINT WITH PREJUDICE WITHOUT FIRST CONDUCTING AN EVIDENTIARY HEARING.

Finally, it would be inappropriate to dismiss Plaintiff BCM's Complaint with prejudice on the sparse record currently before the

Court. First, Defendant Oprandy fails to cite any legal authority whatsoever which establishes that it is entitled to the relief sought. Indeed, as noted above, Defendant Oprandy only cites a single Vermont case in its moving papers, which is both not binding on this court and is wholly inapplicable to the instant motion. Second, Defendant Oprandy's submission relies entirely on a factual Affirmation from Defendant's real estate counsel, and is devoid of even a sworn statement by any Defendant. Thus, Defendant Oprandy's motion papers are insufficient to support its request to dismiss Plaintiff's Complaint with prejudice, and its motion should be denied. The relief sought is analogous to a summary judgment application where important factual determinations cannot be made on papers alone.

It is undisputed that Plaintiff BCM has expended a substantial amount of time and money in connection the project at issue. Entertaining Defendant Oprandy's demand for what amounts to a final disposition with respect to all of BCM's claims without the benefit of a more complete record would be highly prejudicial to Plaintiff BCM. Accordingly, it is respectfully submitted that, at a minimum, the Court conduct an evidentiary hearing prior to rendering a decision which could potentially cause BCM to sustain a loss in excess of $1,800,000.

17

## CONCLUSION

For the foregoing reasons, Plaintiff BCM respectfully requests that the Court deny Defendant Oprandy's motion to dismiss Plaintiff's Complaint with prejudice.

**THE EPSTEIN LAW FIRM, P.A.**
Attorneys for Plaintiff

By: _____
    BARRY D. EPSTEIN

Dated: 9/21/11

18