UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X
BCM DEVELOPMENT, LLC,

                Plaintiff,

- *against* -

PETER OPRANDY as trustee of THE OPRANDY
TRUST, and THE OPRANDY TRUST,

                Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

ECF CASE

Index No. 08 Civ. 9050 (CS)

## REPLY MEMORANDUM OF LAW

Bleakley Platt & Schmidt, LLP
One North Lexington Avenue
White Plains, NY  10601
Tel No.:  (914) 949-2700
Fax No.:  (914) 683-6956

# TABLE OF CONTENTS

                                                                                                                              Page

TABLE OF AUTHORITIES ....................................................................................... ii

Preliminary Statement ................................................................................................. 1

Statement of Facts ....................................................................................................... 1

POINT I ....................................................................................................................... 6
   DEFENDANT HAS BREACHED NO IMPLIED COVENANT OF
   GOOD FAITH AND FAIR DEALING ................................................................ 6

POINT II ...................................................................................................................... 8
   THERE WAS NO MUTUAL MISTAKE UNDER THE SECOND AMENDED
   STIPULATION EXCUSING PLAINTIFF'S OBVIOUS DEFAULT ................. 8

POINT III .................................................................................................................. 10
   THERE IS NO REASON NOR BASIS FOR AN EVIDENTIARY HEARING ............... 10

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**
*Manhattan Motorcars, Inc. v. Automobile Lamborghini, S.p.A.*, 244 F.R.D. 204
   (S.D.N.Y. 2007) ......................................................................................................... 7
*Post v. Killington, Ltd.*, 2011 U.S. App. LEXIS 11121 (2d Cir. 2011) ........................ 10
*Southface Condo. Owners Ass'n Inc. v. Southface Condo. Ass'n. Inc.*, 169 VT 243, 733 A.2d 55
   (1999) ...................................................................................................................... 10

**Preliminary Statement**

This Memorandum of Law is submitted on behalf of the defendants in this action, Peter Oprandy, as trustee of The Oprandy Trust, and the Oprandy Trust (collectively hereinafter referred to as "Oprandy"), in reply to the opposition of plaintiff BCM Development, LLC ("BCM") to the motion of Oprandy for an Order directing the dismissal of this action "with prejudice," and in further support of the motion. Incredibly, in BCM's "Introduction" to its Memorandum of Law (hereinafter, "Pl. Mem. Law"), plaintiff categorizes Oprandy's motion as an "improper attempt to capitalize on their repeated refusal to bargain in good faith." Apparently, plaintiff and its counsel are laboring under some perverse belief that a Stipulation and Order of Discontinuance executed by a United States Federal District Judge is something that is subject to "bargaining." The opposition to the motion is utterly frivolous and must not be seriously entertained.

**Statement of Facts**

The pertinent facts have been previously set forth in Oprandy's attorney's pre-motion letter to the Court dated May 16, 2011, as well as his Affirmation dated August 25, 2011 in support of the motion (hereinafter, "Mulligan Aff."). The salient facts are:

1.  The underlying action was instituted by plaintiff BCM Development, LLC ("BCM") on or about October 22, 2008, seeking monetary damages and other relief purportedly arising from a contract entered into with Oprandy for the purchase and sale of real property (hereinafter, the "Contract"). Plaintiff's Sixth Claim for Relief sought damages for Oprandy's alleged "breach of the Implied Covenant of Good Faith and Fair Dealing which existed between the parties."

1

2. In January 2009, Oprandy appeared through the counsel and filed an Answer, denying all material allegations asserted in the Complaint, together with a Counterclaim seeking damages for breach of contract, as well as other declaratory and equitable relief. The Counterclaim was timely answered by plaintiff.

3. On or about March 27, 2009, the parties and their counsel executed a certain Stipulation and Order of Discontinuance (the "Stipulation") setting forth the terms of an amicable resolution of this action. The Court executed the Stipulation and Order on March 31, 2009 which was filed with the Court Clerk on April 1, 2009. (Mulligan Aff., Exh. "A").

4. By the terms of the So-Ordered Stipulation, the parties agreed to honor that certain Contract dated October 16, 2001 for the purchase and sale of land as described in the Complaint. The Contract itself had been mutually amended on eight (8) separate occasions beginning on or about June 20, 2003 through the period ending September 20, 2008 (as set forth in Exhibits "B" through "I" of the Complaint.)

5. By the terms of the So Ordered Stipulation, the parties agreed to put to rest any remaining controversies between the parties relating to the issue of "extension fees" set forth in the First and Second Claims for relief set forth in the Complaint by certain designated and agreed upon increases in annual principal payments of the purchase money mortgage referenced in the pertinent Contract and Rider thereto (¶ 2) and further extended the previously agreed upon final closing date of September 15, 2008 in return for a series of scheduled payments to be made by plaintiff to Oprandy through as late as March 31, 2010 (¶ 3).

6. Under ¶ 5 of the Stipulation, BCM agreed that in the event of its failure to make any of the scheduled payments under ¶¶ 2 or 3, "the entire Contract and this Stipulation shall be

deemed to be in default by the Company and the parties agree that this Court may enter Judgment dismissing this Action **with prejudice** upon presentation by the attorneys for the Trust. In such event, the Company agrees that it is barred and enjoined from prosecuting any further claims against the respective defendants in any jurisdiction arising prior to the date of this Stipulation, and has thereby **waived** any and all claims asserted in the Complaint or embraced within the scope of the Complaint . . ."(emphasis added).

7. Thereafter, by mutual written consent of the parties, a separate Amendment to the Stipulation was executed, dated April 19, 2010, which specifically recognized and confirmed the terms of the So Ordered Stipulation. Six (6) additional monthly extensions were bargained for at a payment of $5,000 per month, which ultimately set September 30, 2010 as the outside "time of the essence" final closing date. (Mulligan Aff., Exhibit "B"). Plaintiff paid $30,000 in extension fees under this agreement.

8. Again, by mutual written consent of the parties, a Second Amended Stipulation was executed on September 30, 2010, which also specifically recognized and confirmed the terms of the So Ordered Stipulation. Under its terms, twelve (12) additional extensions were granted which ultimately set September 30, 2011 as the final outside "time of the essence" closing date. (Mulligan Aff. Exhibit "C"). Plaintiff has admittedly paid an additional $34,500 for five of the twelve possible monthly extensions it sought and received from Oprandy.

9. On March 14, 2011, Luke M. Charde, Jr. Esq., Oprandy's real estate attorney, notified plaintiff's counsel, Mr. Epstein, that Oprandy had received two letters from plaintiff dated February 21 and March 1, 2011 which indicated that plaintiff, while seeking to "negotiate a **restructuring** of the deal," was clearly in default for failure to pay the negotiated and agreed

upon extension fee due on March 1, 2011.(emphasis added). Mr. Charde correctly offered two options: (1) continue in default at the risk of Oprandy's pursuit of remedies based thereupon, *i.e.*, a return to this Court as provided in the original Stipulation, or (2) cure the default within ten (10) days and proceed towards the negotiated closing on September 30, 2011. (Mulligan Aff., Exhibit "D").

10. Plaintiff's counsel responded by letter dated April 4, 2011, which was self-described as "a good faith effort" to resolve the "differences between the respective parties." (Mulligan Aff., Exhibit E). In fact, this statement was patently self-serving as there were no legitimate good faith "differences" between the parties. Further, as set forth in plaintiff's Statement of Material Fact Nos. 22 and 23 (Pl. Mem. Law, pp. 7-8), it asserts that "Plaintiff BCM's attorney advised Defendant Oprandy's real estate counsel in writing of BCM's communicated desire to **renegotiate** the parties' agreement in good faith." (Emphasis added). Further, BCM's attorney offered to forward Oprandy $17,000 in extension fees for March and April 2011 **if** Oprandy agreed to "negotiate a restructuring of the parties' existing contract" and "submit to binding arbitration should the parties fail to reach an agreement." In fact, plaintiff had already defaulted and Oprandy had neither any obligation to, nor interest in, "renegotiating" yet again the terms of the original Contract or Stipulation, as twice amended, much less "arbitrate" and agreement that had been So Ordered by his Court.

11. On April 17, 2011, Mr. Charde confirmed to plaintiff's counsel that, under the terms of the Second Amended Stipulation, plaintiff was in default as it had failed to make the required monthly extension payments due March 1 and April 1, 2011. As he had weeks previously, Mr. Charde correctly offered two options: (1) continue in default at the risk of

Oprandy's return to this Court as provided in the original Stipulation, or (2) cure the default within ten (10) days and proceed towards the negotiated closing on September 30, 2011. (Mulligan Aff. Exhibit F)

12. On April 27, 2011, Mr. Epstein acknowledging that plaintiff "is disappointed that this matter had not been able to close as of this date, however, there were circumstances which were well beyond its control." (Mulligan Aff., Exhibit G)

13. Plaintiff's "failure to make any of the payments due as agreed upon" *i.e.*, since March 1, 2011, provides Oprandy with the basis for invoking the entry of a Judgment by this Court under paragraph 5 of the original So Ordered Stipulation, dismissing the underlying action "with prejudice." Further, BCM should be enjoined from bringing any further action arising from the Contract and be deemed to have waived all claims for a refund of any amounts previously paid under the Contract or Stipulation.

14. Under paragraph 9 of the So Ordered Stipulation, the Court has maintained jurisdiction of this action for the purpose of enforcing the Stipulation and, accordingly, Oprandy is entitled to an Order directing Judgment dismissing this action "with prejudice" to be filed and entered with the Clerk of the Court. There is no basis to hold a "factual hearing to determine the rights of the parties" which have been clearly set forth in the numerous agreements previously executed by the parties and/or their respective counsel, as well as the Stipulation and Order of Discontinuance" So Ordered by this Court on March 31, 2009.

## POINT I

## DEFENDANT HAS BREACHED NO IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

The contract at issue in this motion is a so ordered Stipulation executed by this Court. It has been breached and Defendants are entitled under its terms to an Order dismissing this action "with prejudice." Plaintiff is desperately trying to rewrite history and impose upon Defendants a duty to renegotiate a Contract which had been amended no less than ten (10) times in an effort to provide plaintiff the opportunity to fulfill its obligations thereunder. Mr. Millstein admits, as he must (Millstein Aff., ¶ 2), that "a number of facts are not in dispute." These facts are represented in the documents operative to this motion, the Stipulation and Order of Discontinuance, (See Exhibit A to Mulligan Aff."), the First and Second Amendments thereto (Exhibits B and C to Mulligan Aff.), as well as all other Exhibits submitted by Defendants. Yet, despite the fact that Mr. Millstein persists in accusing Oprandy of not acting in "good faith," he blatantly admits that what plaintiff is demanding-even after it has admittedly defaulted- is "a form of **restructuring of certain provisions** which was required in these economic times." (Millstein Aff., ¶ 4)(Emphasis added). Thus, he concludes with a plea to this Court to "rule in an equitable and practical manner, taking into account what is happening today in our country" and asks the Court to grant "an extension of nine months . . . before this case is dismissed." (Millstein Aff., ¶¶10- 13). The plea is unreasonable and misguided. Surely plaintiff must realize this is beyond the scope of this Court's jurisdiction and totally unavailing. This Court So Ordered an agreement between the parties embodied in a Stipulation, twice amended, under the terms of which plaintiff has admittedly defaulted. Plaintiff's perverse position is starkly exhibited in its argument that "Although the Stipulation and subsequent amendments **temporarily resolved** the parties'

differences, Defendant Oprandy has once again breached the implied covenant of good faith and fair dealing by refusing to even discuss BCM's numerous requests to make necessary adjustments to certain portions of the parties' agreement." (Pl. Memo of Law, p.12). (Emphasis added). In other words, Plaintiff accuses Oprandy of bad faith for not renegotiating the terms of a document which embodied **a fully negotiated settlement agreement** So Ordered by this Court- **not a temporary resolution** of the parties' differences. The argument is specious and should not even be entertained.

Plaintiff cites numerous cases for the proposition that it is well recognized in New York that every contract contains an implied covenant of good faith and fair dealing. (Pl. Mem. Law, pp. 10-11). Defendants do not argue the point, but rather stress that the application of that rule of law has no applicability whatsoever to the instant situation where one of the parties to the contract sought to be enforced- which happens to be no less than a So Ordered Federal Court Stipulation of Discontinuance – is desperately trying to stave off the effects of its breach, no more, no less. The cases cited by plaintiff are wholly inapposite-the parties settled this case by, among other things, granting plaintiff additional extensions of time in order to satisfy its contractual obligations. Plaintiff defaulted. Defendants have done nothing "intentionally or purposefully" to prevent plaintiff from carrying out the terms of the Stipulation. *Manhattan Motorcars, Inc. v. Automobile Lamborghini, S.p.A.*, 244 F.R.D. 204, 214 (S.D.N.Y. 2007). To the contrary, Defendants have exhibited exemplary good faith in acquiescing to plaintiff's decade old pleas for contract extensions. Plaintiff's argument is beyond strained and must be entirely rejected.

## POINT II

### THERE WAS NO MUTUAL MISTAKE UNDER THE SECOND AMENDED STIPULATION EXCUSING PLAINTIFF'S OBVIOUS DEFAULT

Consistent with its illogical and baseless opposition to the motion, Plaintiff disingenuously attempts to argue that the parties "initially believed that the subdivision's water system would consist of individual wells for each of the forty (40) residential lots which would cost approximately $9,000- $10,000 apiece. (Pl. Mem Law, p.14 and Millstein Aff., ¶ 7). Aside from the fact that Mr. Oprandy denies having any such belief (Oprandy Aff. ¶ 3), it is self-evident that at least Mr. Millstein admits that as of October 2003 he learned that the subdivision would likely require the installation of a large central water system at a substantial upfront cost. (Pl. Mem. Law, p.15 and Millstein Aff., ¶ 7, and Exhibit B thereto). Millstein goes on to claim that BCM "recently discovered" that the revised state regulations which purportedly would have caused the substantial increase in cost of the central water system "never went into effect." (Pl. Mem. Law, p.15 and Millstein Aff., ¶¶ 8, 9). However, Mr. Millstein fails to elucidate exactly **when** it was that he "recently discovered" this fact. As stated, the letter which he attaches to his affidavit is dated **October 2, 2003** and indicates that: "Although the Bellvale Water System currently meets drinking water standards, new regulations will be in place by **January 1, 2004** that will **most likely** make the Bellvale system out of compliance for dissolved uranium." Without in any way explaining how this information which, aside from never being imparted to Mr. Oprandy, somehow qualifies as a form of "mutual mistake," BCM argues that it should not only prohibit this Court from granting the requested relief, but somehow allow the Court to exercise its equitable powers and grant a nine-month extension to obtain governmental approval to construct individual water wells. In addition to the fact that the argument is, at best, a legal

8

non-sequitur and the request is beyond the Court's purview, the rather obvious point is that the original "notice" of the apparent change in the State regulations, whether they were ever enacted or not, was at least received by plaintiff in October 2003 which fell into the time period time between the execution of the first amendment to the original Contract effective June 20, 2003 and the second amendment to the Contract effective July 29, 2004-over eight years ago.

Plaintiff was free to deal with this "mistake" at that time. It chose to proceed with the Contract. It did not opt to allow the First Amendment to expire and seek to terminate the Contract for failure to obtain developmental approvals. Rather, it chose to pay the agreed upon extension fee for the second ninety (90) day extension period beginning November 1, 2003 and ending January 31, 2004. It further paid for two more extensions under the first amendment to the Contract alone, thereby extending the Closing until July 30, 2004. (See Oprandy Aff., ¶ 5). Going forward, the Contract was amended seven (7) more times before the instant litigation was initiated and purportedly settled. Enough is enough. Again, defendants do not argue with the authorities cited at Point II of plaintiff's memorandum of law- but, again, they must fall upon deaf ears. They are wholly inapposite to the situation at bar-this case has already been dismissed without prejudice. The terms of the settlement cannot and will not be renegotiated. Plaintiff has defaulted under its very clear terms and the case must now officially be dismissed "with prejudice."

## POINT III

## THERE IS NO REASON NOR BASIS FOR AN EVIDENTIARY HEARING

The record before this Court is not sparse. There is no need to "conduct an evidentiary hearing to further develop the record." (Pl. Mem. Law, p. 3). The case was initiated, settled and discontinued without prejudice. Plaintiff has admittedly defaulted under the terms of the Stipulation whose terms provide a clear mandate for the entry of a dismissal of the action with prejudice. There is no complex legal issue presented. Defendants' application is so straightforward that plaintiff's argument that somehow Oprandy's reliance upon an attorney's affirmation and "devoid of even a sworn statement by any defendant" defies logic. The record speaks for itself. Plaintiff initiated a lawsuit. The lawsuit was settled by way of an executed So Ordered Stipulation, amended twice thereafter, and plaintiff still defaulted. Defendants stand by their attorney's statement pertaining to the then anticipated opposition to the motion based upon the utterly inapposite breach of implied covenant of good faith argument that "it is clear **in this Circuit** that such an 'implied covenant' requires only that 'parties act with faithfulness to an agreed purpose and consistency with the justified expectations of the other party.'" *Post v. Killington, Ltd.*, 2011 U.S. App. LEXIS 11121 (2d Cir. 2011), citing *Southface Condo. Owners Ass'n Inc. v. Southface Condo. Ass'n. Inc.*, 169 VT 243, 246, 733 A.2d 55, 58 (1999). There is no substantive difference in the Vermont law applied in that case from the New York law applicable here – both of which are applicable in the Second Circuit. Defendants have no obligation to renegotiate a Stipulation of Discontinuance So Ordered by this Court.

## **CONCLUSION**

This action must be dismissed with prejudice pursuant to the previously entered Stipulation and Order of Discontinuance.

Dated: White Plains, New York
September 30, 2011

BLEAKLEY PLATT & SCHMIDT, LLP

By: *[signature]*
William H. Mulligan, Jr. (WM-2945)
*Attorneys for Defendants*
One North Lexington Avenue
White Plains, New York 10601
(914) 949-2700

11